Good morning, Your Honor. May it please the Court, my name is Jihan Thomas. I represent Petitioner. I'd like to reserve two minutes rebuttal time. Okay, watch your clock. Thank you. We ask this Court to find that the agency misconstruction of the record and its failure to address the motivations behind Petitioner's harm has prejudiced Petitioner and affected the outcome of the proceedings. Could you get the mic a little closer? Yeah. Okay, thank you. Petitioner has affected the outcome of the proceeding in that the agency was unable to evaluate her case on its own merits. Now, the Board relied here on four facts that were not supported by the substantial evidence in dismissing both the past harm and the future harm. The first fact was Petitioner was not physically harmed, as opposed to the correct fact that Petitioner escaped burning alive when her home was set ablaze by her natives who attempted to murder them because of their Chinese race. That she was hit on the head every time she took the public transportation. That she was touched inappropriately by the native Muslim because she's a Chinese female. The second fact was it was Petitioner's sister's home that was burned, as opposed to it was actually Petitioner's home as well. She has lived with her sister since the age of 12. In fact, at AR 225, Petitioner said, it was my home that was burned down. The third erroneous fact was a cousin was hit on the head, as opposed to Petitioner was herself hit on the head every time she took the public transportation. The last erroneous fact that the Board relied on was that the Petitioner's family remaining at home were unharmed, as opposed to her brother was unable to earn a living. His motorcycle store was attacked and extorted by the native. He prompted him to close it down. The native tried to chase him and attack him, and he escaped to a neighbor's home. He even opened a pepper plant to grow peppers, but he was also extorted and threatened. So these erroneous facts, we asked the Court to conclude that the misconstruction of the record precluded a meaningful review of her case, thereby denying her a full and fair hearing to have a proper analysis of her asserted claims. She was prejudiced by the agency performance because it potentially affected the outcome of the proceedings. For example, not considering that Petitioner has fled death when her home was set in place under this Court precedent. Where in the record does it say that it was her home? She has testified, Your Honor, that I was living with my older sister at AR 225. She has also testified that she has been living with her sisters 12 years old at AR 288. So the fact that she... Okay. And was there evidence that whoever burnt down the home knew that she was inside? Yes. She said they knew we were inside and that they put cigarette paper and cigarette butts, and that would be at AR 225 and 250 and 433. Your Honor, also, under the proper facts determining that she has fled death and burning alive under Lopez v. Ashcroft, this Court has concluded that when Lopez was placed in a warehouse that was set on fire, that attempted murder constitutes physical harm, and that physical harm under the court precedent in Shen v. INS, that is past persecution. Also, you know, ignoring the fact that her family remaining at home are still harmed under this Court precedent, Corabulina v. INS, Vera v. and even the agency decision, a matter of AEM, was sufficient to establish her future well-founded fear. Also, Your Honor, dismissing the fact that she was the one that was hit on the head every time she took public transportation is completely different facts than saying that her cousin was hit on the head. So we believe that her due process was violated in that her case was not properly evaluated on its own merits. We also ask this Court to find that the Court has completely ignored petitioner argument that she is a pre-re-ID act, that the motivation of the harm she has to show on the in-home. But they found, of the BIA and IJ, found the testimony credible. That is correct. But insufficient to establish past persecution. Yeah, because they did not apply the proper standards. The immigration judge completely ignored every testimony and indicated it wasn't on account of a protected crime. For example, when the home was set in place, the immigration judge said that could have been an accident. When the brother was extorted, she said that was possibly because of a criminal activity or a robbery. When she said that she was hit on the head every time, she said because the bus was crowded. When she said that the BIA, the agency, said she was hit on the head while riding the bus, but it does not appear she received more than minor physical injuries. Is that correct? I believe that was correct in the footnote, but it was completely dismissed from the analysis. And even the dismissal. What do you mean, dismissed from the analysis? I mean, in the analysis of the content of the decision, it said a cousin was hit on the head. And then in a footnote, the board said a Petitioner asserts in her brief that she has. Well, I'm sorry. I'm reading from the BIA decision. That is correct, Your Honor. Well, it's their analysis that we're reviewing, correct? That is correct, Your Honor. But they dismiss it because she didn't suffer minor injury. But under this precedent in Kwan, and I believe it was Kwan, that serious injury is not required to establish that the harm is enough to rise to the level of persecution. Also, in DelVal v. Ines, this Court has also held that the person don't have to be maimed for the harm to qualify to be persecution. We also ask this point of view. And your point about the fire in the house, they acknowledge that her sister's home was burned. You say what they failed to recognize was that she was in the house at the same time? That it was also her home. She has lived there since the age of 12. The fact that the sister owns the home is immaterial because she lived with her sister since she was age of 12. That was also her home. She wasn't the owner, right? That's correct, but I believe the material possession is not the same. She lived there. She considered it her home. Counsel, you're going awfully fast, and you're going to not answer my question. I apologize. We'll take care of the time. Okay. If you can give me time to get my question out. Okay. Okay, so I'm trying to understand. You think that the BIA analyzed this as something where she was the home was burned. Nobody is disputing that, and nobody is disputing that it was her sister's home. But you're reading their opinion as being based on the notion that she was not there? Yeah, it was something that happened to everyone else. It happened to a sister. It happened to a brother. It happened to a cousin. Nobody is putting that she was already inside that home when it was set in place. She escaped burning alive. She escaped death. That's a different fact completely when just referring that it was just a sister's home that was burned, or that it was just a cousin that was set. It was just a brother that, you know. Does the immigration remind me, did the immigration judge acknowledge that she was in the home at the time of the fire? I believe, yes, one of her factual findings that she was inside the home at the time. But you're assuming because that's not specifically recounted in the BIA decision that they are discounting the fire because they assume she wasn't there? I believe, reading the decision, they said the harm does not rise to past persecution because it was just a sister home that was burned. It was just a cousin that was hit on the head, which was not the facts. Well, they do acknowledge that she was hit on the head herself. But dismissed it because of a minor injury in her foot? No, that is correct. I have a question. Yes, Your Honor. About the hitting on the head, how many incidents were there where she was hit on the head, and what evidence is there that she was hit on the head because of her ethnicity? Okay. There was no counting, but she said in her testimony, every time I took the public transportation, I was hit on the head. She had a credible testimony that people hit her on the head because she is Chinese at AR-252 and 435. So it is her belief that she was hit on the head because of her visible Chinese ethnicity. Under Garcia-Martinez, this court precedent said that a credible testimony as to the motive of the attackers is sufficient to establish the nexus in this case, and I believe I'm running out of my time for my two minutes. Thank you. Why don't you reserve the rest? Thank you so much, Your Honor. Your Honors, may I please the Court. Nancy Cantor on behalf of the Attorney General. The government's position today is that substantial evidence supports the agency's determination that Petitioner 1 failed to demonstrate past persecution and 2, failed to demonstrate sufficient individualized risk under the disfavor group analysis to establish a well-founded fear of future persecution. I'd like to point the Court to, I'll go ahead and answer the Court, any questions the Court might have about whether or not the Board misconstrued the evidence. The government's position today is that the Board did not. We probably considered all of the evidence before it. The record states that, the record evidence shows that it was her sister's home. She was living there at the time, but during her testimony before the immigration judge, Petitioner testified it was her sister's home. Why does ownership make a difference? If she's residing in the home, so they were trying to burn down the place where both of them resided. Your Honor, ownership doesn't make a difference. The key is that the house was identified as her sister's home. Just like when I describe the home that I grew up in, it is my parents' home. I was living there. But so what? If it's burned down and you're Chinese and you're being targeted, the home's being targeted because you're Chinese. I absolutely agree. What difference does it make who owns the home? I absolutely agree, Your Honor. It doesn't matter. It's simply a physical descriptor for the home. The agency did not discount the fact that she was living there. It just simply didn't specify that in its decision. There's no evidence of it. Well, the agency minimized the harm by referring to it as the sister's home and not recognizing that if she's living there, it's the place where she's living. And according to the way that you would accord the place where she's living. I disagree. Petitioner testified. Well, you're free to disagree, but I'm the one who gets to judge, okay? I agree, Your Honor. Disagree all you want, but give me an argument why you should prevail on this. Because when she testified before the agency, she called the home her sister's home. When asked, did you live there, she said yes. But her initial way of describing the home was to identify it as her sister's home where she was living. And it's only a descriptor, and they're not negating the fact that she was put in fear and risk of death in a home that's been set on fire? Well, Your Honor, there's no evidence that the board here is discounting it. Well, we don't have any evidence, and we only have what they say, and they say that her sister's home was burned. Absolutely, but as you noted, the immigration judge acknowledged and accepted that she was living in the home at the time. But the BIA, do you agree that we're reviewing the BIA's decision? Yes. Okay, so the BIA just calls it the sister's home and doesn't seem to recognize that that was the place where she lived. Yes, Your Honor. The end of the disputed or the controversial sentence says, all these things happened to a sister, to a cousin, and a brother. Those are the things that they cite as evidence of persecution. And then they say at the end, Butt responded herself was never physically harmed. And then they drop the footnote saying, well, she was on a bus, and she got hit on the head. But it was nothing more than a minor physical injury. So the thrust of the BIA's rationale seems to be, all these things happened to family members but not to her. Now, you're saying, okay, the fact that she was in the home being burned is implicit because the EIJ recognized it. But the way it's framed is it's all a focus on an implicit finding that all these harms happened to other people. And it's hard to say, to accept the notion that if you are in a house, and there's no doubt we should be speculating that the attackers knew who owned the house. They were attacking the occupants, presumably, and their possession, and putting them at risk. So why isn't that a serious event that put her at risk of physical injury? Well, Your Honor, if you look at the cases cited following that sentence, it appears that the Board's emphasis is on whether or not the harm suffered rises to the level of persecution. The Court, by dropping the footnote referencing that she did suffer minor injuries, the cases cited say persecution is an extreme concept. Well, Bernie, being in a house fire, we just had a house fire in our neighborhood over the weekend, and it was pretty scary. I mean, that house had got four fire engines coming to it. So at least the fire department thought it was an important event. And I'm not being facetious. I mean, if these homes are being burned while the occupants are in it, that's how people get killed. In fact, that's a form of terrorism. So one would expect that the BIA would take a careful look at somebody being in a house as a family member and being put at risk by a fire. Absolutely, Your Honor, and I do believe that the agency considered it. There's a presumption that the agency considers the evidence. They clearly included it in the board's decision, and they reached the conclusion that that did not rise to the level of persecution. Whether or not this Court agrees with it is up to this Court. But under the substantial evidence standard, the question is whether the record compels the contrary conclusion. Here, some people left some trash with cigarette butts outside a building outside of her home, outside of her sister's home where she was living at the time. Government doesn't dispute that. The board concluded that didn't rise to the level of persecution. Government's position today is that substantial evidence supports that position. Well, is there any evidence that you're aware of in the record that shows that the fire or the hitting on the head was the result of her religion or her ethnicity? Petitioner's testimony was that she was – that the fire was a result of the fact that they were Chinese, and that she was – The question is, is there evidence to support her conclusion? I've been hit on the head, and I could conclude a lot of different things from that. And so the question is, is there anything on the record that shows that someone said, get out Chinese or get out Christians or anything like that in connection with any of these incidents? Outside of your – outside of Petitioner's testimony, no. There is no objective evidence that the individual acts suffered by Petitioner were the result of Chinese or religious discrimination. Yeah, but they – the BIA didn't go off on nexus, did it? No, it did not, Your Honor. So that's not at issue. It isn't. We have to assume it's – there's a connection there, but their decision is it doesn't rise to the extreme level of persecution. And she was being credible, so we take her testimony as true, and it's sufficient as to each fact that she testified to. Absolutely, Your Honor. It's not – it's because the Board did not issue its decision on past persecution on nexus. However, the individualized risk, which Judge Dawson is asking about, is relevant with regards to Petitioner's claim under the disfavored group analysis. Right. That's a separate claim. Absolutely. I thought we were still talking about persecution. Well, I mean, it – absolutely. In the context of past persecution, not relevant. In the context of disfavored group analysis, absolutely relevant and critical to the lack of any evidence that Petitioner was individually targeted in a manner that sets her apart from other Chinese Christians in Indonesia. Unless the Court has any other questions, the Government is happy to rest on the briefs. Argument submitted. Thank you. Your Honor, the fact that the Board has actually – the erroneous application of the facts by the Board, and if, in fact, the Board had analyzed the pre-re-ID nexus, it would have remanded it back to the IG for a factual finding on the proper requirement. What is the closest case that you have that would say this, if we're accepting your characterization of the evidence, the fire and her being hit on the head, rises to the extreme level of persecution? Lopez v. Ashcroft. This is exactly the case on point. Lopez was placed in a warehouse. It was set on fire for an act to murder him, and this Honorable Court has held that an act to murder is a physical harm, and that physical harm constitutes persecution under this Court precedent in Shen v. INS. Okay. And the fire got started how? According to Petitioner's testimony, that a native youth Muslim would stand in front of her house, get a light cigarette, and put papers and put it in front of her house. And they burned them because they are Chinese. This is what she testified. We also ask this Court that not only she established past persecution, but also the government and the agency has dismissed the disfavored group analysis and likened Petitioner's case to Lulong, which is not applicable. Lulong rested her claims on fierce comment to other ethnic Chinese Christians. Here she has suffered far greater harm than Sa'al v. Ashcroft. Her house was set ablaze. She escaped death and burning alive. Her house was burned down. The damage was so extensive that it even extended to the next-door neighbor. She continued to live in this inhabitable environment with its walls filled with smoke. She was touched inappropriately, and she was hit every time she gets on the bus. So she has definitely established individualized risk, and I respectfully request that this Court grant more petition. Thank you, Counsel. Thank you. This case would be submitted on June 10.
judges: Dawson, Wardlaw, Fisher